### SHILLAK *v.* WHITE.

*(City Court of Brooklyn, General Term.* May 25, 1891.)

NEGLIGENCE—DANGEROUS PREMISES—EVIDENCE.

    In an action for negligence alleged to have caused the death of plaintiff's intestate, it appeared that one V., who had leased certain premises from defendant, employed decedent to put glass in a window thereof. Across the outside of the window were two iron guard-rails, about five-eighths of an inch in diameter, secured by screws to the sides of the window. The distance from the rails to the inner edge of the window-sill was about 18 inches. Decedent was seen at work, sitting in the window, with his feet inside. When next seen, he was lying on the ground below, both iron rails and the screws which secured them having fallen also. *Held,* that there was no evidence of negligence on the part of defendant.

Appeal from trial term.

Action by Morris L. Shillak, as administrator, etc., against Alfred T. White. The complaint was dismissed, and plaintiff appeals.

Argued before OSBORNE and VAN WYCK, JJ.

*Chas. E. Burke,* for appellant. *Moore & Wallace,* for respondent.

OSBORNE, J. Defendant was the owner of a large tenement-house, known as the "Tower Building," situate at the corner of Baltic and Hicks streets, in this city. One Vandervoort was a tenant of certain apartments in said building, on the first floor up from the street. On November 8, 1890, Mrs. Vandervoort employed plaintiff's intestate, a glazier, to put in a pane of glass in the upper sash of one of the kitchen windows. Deceased had been similarly employed before by her. Outside of the window in question were two iron bars or guard-rails about five-eighths of an inch in diameter, each of which was fastened at the ends by two iron screws to the sides or hanging stiles of the window. Deceased was seen at work by one of the witnesses sitting on the ledge of the window with his feet inside, and his back to the bars. The next seen of him was about 10 minutes after, when he was lying in the yard below, dead. Both of the iron bars, with some of the screws that held them in place, fell to the ground with deceased. The space from the bars to the inside of the window-sill was 18 inches. This action was brought to recover damages, on the ground that death of plaintiff's intestate was due to the negligence of defendant in consequence of the alleged careless and unsafe condition of said guard-rails, and that they constituted a nuisance. On the trial, plaintiff's complaint was dismissed on the ground that there was no evidence of negligence on the part of the defendant, and that he owed no duty to the deceased, and plaintiff now appeals. We think that this action was correctly disposed of by the learned trial judge. There is no evidence showing or from which it can be fairly inferred that deceased was himself

free from negligence or without fault. Whether he lost his balance while at work, and, with his whole weight coming suddenly against the guard-rails, they proved insufficient to stand the sudden strain thus imposed upon them, or whether he deliberately leaned his body against the guard-rails, and so forced them out, and then fell, we are left entirely to conjecture. The learned counsel for the appellant takes the ground that it was the duty of the landlord to provide guard-rails that would sustain the weight of the deceased in leaning against them, or that, having provided rails, the landlord was bound to see that they were in the first instance, and continued to be, strong enough to sustain the weight of an adult leaning on or against them. We do not think any such duty was imposed on the landlord of a tenement-house. These rails are ordinarily attached to windows for the protection of small children, to prevent them from falling out, and the most that can be expected is that they should be reasonably fit for that purpose. It appeared in evidence that the position of the deceased was one usually adopted in putting in glass. Every-day observation shows that the same position is adopted by house servants in cleaning windows, yet it has never been held, to our knowledge, that guard-rails were a necessary accompaniment to insure the safety of persons so employed. It also appeared in evidence that it would take a pressure of about 40 pounds to force out the screws holding these rails in place. It seems to us that, long before that amount of pressure could have been applied by deceased, he should have felt the pressure of the rails on his back, and been warned thereby that he was leaning out too far. There is nothing in the case going to show that defendant knew, or should have had reason to suppose, that these rails would be used as deceased would appear to have used them. We certainly cannot assume that they were put on the window as a back rest for glaziers or other persons having occasion to sit on the window-sill. The space of 18 inches between the rail and the inside of the window-sill would seem to have afforded ample room for deceased to do his work, without relying on the rails for a support. We think that the decision in *Edwards* v. *Railroad Co.*, (98 N. Y. 245,) is authority sustaining the ruling dismissing the complaint. For the reasons stated the judgment dismissing the complaint should be affirmed, with costs.